IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

ANTHONY LEE FORD                                                                    PLAINTIFF

v.                                                                                  No. 2:12CV48-M-A

BOLIVAR COUNTY SHERIFF, ET AL.                                                      DEFENDANT

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Anthony Lee Ford, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The defendants have moved for summary judgment. The plaintiff has not responded to the motion, and the deadline for response has expired. For the reasons set forth below, the instant motion for summary judgment will be granted and judgment entered for the defendants.

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue

for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

**Undisputed Material Facts**[1]

On February 8, 2012, Anthony Ford appeared in Cleveland Municipal Court to request an extension for paying various municipal fines. Ford had repeatedly failed to abide by previous extensions, and he had committed similar violations after previous agreements; as such, Judge Jeff Levingston sentenced him to 30 days in jail. Ford had been diagnosed with prostate cancer and had been receiving treatment for it prior to his incarceration. He testified that, at the time of his incarceration, he had only two treatments remaining. Ford was incarcerated for two weeks in the jail, and his prostate specific antigen ("PSA") levels remained within normal limits both during and after his incarceration. Medical professionals use PSA levels – and other indicators – to determine the presence and severity of prostate cancer. Upon sentencing, Ford was sent to the Bolivar County Jail, which is neither operated nor controlled by the City of Cleveland. The next day, A.J. Jackson, head of security for the jail, contacted Chief Bingham and told him that Ford had requested release so he could continue his cancer treatments. Bingham contacted Judge Levinston, who said such release for treatment was acceptable, as long as Ford returned to complete his sentence. Bingham called Jackson and relayed this information – and had no further contact about the matter until February 20, 2012. On that day, Bingham spoke to the Bolivar County Sheriff, who told him that Ford had not been released for treatment. Bingham emailed the Warden of the Bolivar County jail the next day to inform him that Ford had been cleared for release so he could receive medical treatment. Ford was released for treatment on February 21, 2012. Neither Bingham nor Judge Levingston knew that Ford had been

---

[1]The court has taken the facts set forth below, substantially unchanged, from the defendants' motion for summary judgment.

continuously incarcerated until February 20, 2012; Ford had not contacted either of them. The City of Cleveland and Cleveland Police Department had authorized Ford's release for medical treatment, and they conveyed that authorization to officials at the Bolivar Count Jail. The City of Cleveland does not operate or control the Bolivar County Jail. The Cleveland Police Department had neither custody nor control over Ford from February 8, 2012, through February 21, 2012. Prior to February 8, 2012, Ford had missed several of his prostate cancer treatments, but he had at that point complete all but two of them. The Regional Cancer Center informed Ford that he need not complete the remaining two treatments, but should still see another doctor for monitoring.

**Denial of Medical Treatment**

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in

exceptional circumstances may knowledge of substantial risk of serious harm be inferred by a court from the obviousness of the substantial risk. *Id*. Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). This same subjective deliberate indifference standard has been applied to pre-trial detainees under the Fourteenth Amendment as well as convicted inmates under the Eighth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996).

In cases such as the one at bar, arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S.D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

In this case the staff at the Bolivar County Jail, who are not defendants in this case, clearly did not follow through with the instructions to release Ford for his radiation treatments. Even a layman knows that treatment for cancer is important, and failure to receive treatment can pose a serious risk of harm. However, in this case, none of the defendants took any action to delay Ford's treatment. As soon as Ford made them aware of his need for treatment, the defendants took action to ensure that he received that treatment. They did not realize that he had not received the treatments until February 20, 2012, and he was released to receive treatment the

next day. In addition, there is no proof in the record to indicate that Ford suffered any harm from having missed, at most, two treatments during his incarceration. In the record before the court, all of the tests and examinations during the relevant time period reflect that Ford's condition was normal. PSA levels measured just after his release fell in the normal range, and Ford has not provided the court with any abnormal results since that time. Based on the evidence presented, Mr. Ford's treatment was successful, despite his 14-day incarceration. For these reasons, the plaintiff's claim that the defendants denied him adequate medical care must be dismissed.

## Judicial Immunity

Under the facts of the instant case, Judge Levingston enjoys absolute immunity from suit, as all of the acts alleged against him were judicial in nature. In *Sindram v. Suda*, 986 F.2d 1459 (D.C. Cir. 1993), Sindram, a very frequent filer in the Courts of the District of Columbia sued in the United District Court seeking compensatory and punitive damages from two judges and several clerks of the D.C. Superior Court. In dismissing the complaint, the lower court relied on the doctrine of absolute judicial immunity. The Appellate Court affirmed the dismissal of Sindram's action, imposing sanctions for falsifying affidavits in support of *in forma pauperis* petitions and prohibiting Sindram from filing any new civil actions *pro se* before paying the sanctions, holding that these actions were well within the judges' judicial capacity and jurisdiction.

Courts must construe a judge's jurisdiction broadly where the issue is the immunity of the judge. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Crooks v. Maynard*, 913 F.2d 699, 701 (9th Cir. 1990);

> In *Forrester v. White*, 484 U.S. 219 (1988) the court held:
> As a class, judges have long enjoyed a comparatively sweeping form of

immunity, though one not perfectly well defined. Judicial immunity apparently originated, in medieval times, as a device for discouraging collateral attacks and thereby helping to establish appellate procedures as the standard system for correcting judicial error. See Block, *Stump v. Sparkman* and the History of Judicial Immunity, 1980 Duke L. J. 879. More recently, this Court found that judicial immunity was "the settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this country." *Bradley v. Fisher*, 13 Wall. 335, 347 (1872). Besides protecting the finality of judgments or discouraging inappropriate collateral attacks, the *Bradley* Court concluded, judicial immunity also protected judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants. *Id.*, at 348.

If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits, *Id.*, at 660-661. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication. Nor are suits against judges the only available means through which litigants can protect themselves from the consequences of judicial error. Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability. *Id.*, at 226-227.

In *Mireles v. Waco*, 502 U.S. 9 (1991), the Supreme Court stated:

A long line of this Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages. See, *e.g.*, *Forrester v. White*, 484 U.S. 219 (1988); *Cleavinger v. Saxner*, 474 U.S. 193 (1985); *Dennis v. Sparks*, 449 U.S. 24 (1980); *Supreme Court of Va. V. Consumers Union of United States, Inc.*, 446 U.S. 719 (1980); *Butz v. Economou*, 438 U.S. 478 (1978); *Stump v. Sparkman*, 435 U.S. 349 (1978); *Pierson v. Ray*, 386 U.S. 547 (1967). Although unfairness and injustice to a litigant may result on occasion, "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher*, 13 Wall. 335, 347 (1872). *Id.* at 9-10.

The Court also stated:

Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial. *Pierson v. Ray*, 386 U.S., at 554 ("[I]mmunity applies even

when the judge is accused of acting maliciously and corruptly"). See also *Harlow v. Fitzgerald*, 457 U.S. 800, 815-819 (1982) (allegations of malice are insufficient to overcome qualified immunity).

> Rather, our cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. *Forrester v. White*, 484 U.S., at 227-229; *Stump v. Sparkman*, 435 U.S., at 360. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Id.*, at 356-357; *Bradley v. Fisher*, 13 Wall., at 351. *Id.* at 11-12.

The Court also stated:

> But if only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a "nonjudicial" act, because an improper or erroneous act cannot be said to be normally performed by a judge. If judicial immunity means anything, it means that a judge "will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority." *Id.*, at 356. See also *Forrester v. White*, 484 U.S., at 227 (a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive"). Accordingly, as the language in *Stump* indicates, the relevant inquiry is the "nature" and "function" of the act, not the "act itself." 435 U.S., at 362. In other words, we look to the particular act's relation to a general function normally performed by a judge, . . . . *Id.* at 12-13.

In *Dellenbach v. Letsinger*, 889 F.2d 755 (7th Cir. 1989), *cert. denied*, 494 U.S. 1085 (1990), the Court with respect to jurisdiction over the subject matter, held:

> The control of a docket is a key function to the proper workings of a court, and although Mr. Dellenback boldly states - without a citation of authority - that Chief Judge Buchanan's status as Chief Judge did not give him authority to act" without some specific designation of jurisdiction," Appellant's Br. at 13, that proposition is not at all self evident. Again if the judge erred in his belief that he had authority to delay the appeal, his error was at most, a "grave procedural error" - not an act undertaken in "the clear absence of all jurisdiction." *Id.* at 761.

With respect to judicial capacity, the Court noted the approach in <u>Stump</u> in analyzing the issue of whether the act is a judicial act:

> "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.* whether it is a function normally performed by a judge, and to the expectation of the parties, *i.e.* whether they dealt with the judge

in his judicial capacity." 435 U.S. at 362, 98 S.Ct. at 110. *Id.* at 761.

. . .

The Court also noted that "[c]ourts and judges often act *ex parte*" 435 U.S. 363 N.12, 98 S.Ct. at 1108 N.2. Furthermore, the Court specifically stated, as recently as its opinion in *Forester* that "the informal and *ex parte* nature of a proceeding has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character." 484 U.S. at 227, 108 S.Ct. at 544. *Id.* at 762.

The Court indicated that the Supreme Court in *Forrester v. White, supra*, had noted that absolute judicial immunity could also be justified on the ground that:

> Suits against . . . judges [are not] the only available means through which litigants can protect themselves from the consequence of judicial error. Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability. *Id.* at 762.

For these reasons, all of the plaintiff's allegations against Judge Levingston will be dismissed.

In sum, the plaintiff has submitted no proof that any of the defendants caused the 14-day delay in his medical treatment; nor has he offered proof that he suffered harm from the delay. In addition, Judge Levingston is immune from suit. The motion by the defendants for summary judgment will be granted and judgment entered for the defendants. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED,** this the 9th day of August, 2013.

>   /s/ MICHAEL P. MILLS
>   **CHIEF JUDGE**
>   **UNITED STATES DISTRICT COURT**
>   **NORTHERN DISTRICT OF MISSISSIPPI**